1  CATHERINE E. HOLZHAUSER, SBN 118756
   CHRISTOPHER O. HAMMER, SBN 272543
2  **BEESON, TAYER & BODINE, APC**
   520 Capitol Mall, Suite 300
3  Sacramento, CA  95814-4714
   Telephone:    (916) 325-2100
4  Facsimile:    (916) 325-2120
   Email:    cholzhauser@beesontayer.com
5           chammer@beesontayer.com

6  Attorneys for Plaintiff TRUSTEES OF THE NORTHERN CALIFORNIA GENERAL
   TEAMSTERS SECURITY FUND
7

8                 **UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 TRUSTEES OF THE NORTHERN           Case No.
   CALIFORNIA GENERAL TEAMSTERS
12 SECURITY FUND                      **COMPLAINT**
13                        Plaintiff,

14 v.

15 KEOLIS TRANSIT AMERICA, INC,
16         a Delaware Corporation,

17                        Defendant.

18

19      PLAINTIFF ALLEGES:

20                       **JURISDICTION**

21      1.      This action arises under the National Labor Relations Act, 29 U.S.C. § 185; and under

22 the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et seq.*, for the collection

23 of delinquent employee benefit contributions.

24                         **PARTIES**

25      2.      Plaintiffs, the TRUSTEES OF THE NORTHERN CALIFORNIA GENERAL

26 TEAMSTERS SECURITY FUND (hereafter, "Plaintiff Trustees") are fiduciaries of the Northern

27 California General Teamsters Security Fund (hereafter, "the Fund") within the meaning of Section

28

3(21)(A) of ERISA, 29 USC §1002(21)(A) and authorized to bring an action to collect unpaid employer contributions to the Fund pursuant to 29 USC §1132(a)(3) and §1132(d).

3. The Fund is an employee welfare benefit plan within the meaning of Section 3(1) and Section 502(d) of ERISA, 29 U.S.C. §§1002(1) and 1132(d). Plaintiff Fund is a trust fund originally established by a trust agreement on April 1, 1954. A true and correct copy of the Fund's Agreement and Declaration of Trust, restated as of November 11, 2016, is attached hereto as Exhibit "A" and is incorporated by reference.

4. Plaintiff Trustees are informed and believe, and on this basis allege, that during all relevant times described in this Complaint, KEOLIS TRANSIT AMERICA, INC. (hereafter, "Defendant Company") was a Delaware corporation, organized and existing under the laws of the State of Delaware.

5. During all relevant times described in this Complaint, Defendant Company was located and operated in Reno, Nevada and engaged in the transportation business.

6. Pursuant to the Fund's Agreement and Declaration of Trust, the Fund may institute legal proceedings to collect delinquent employer contributions in the United States District Court district in which the Trust is administered. (See Exhibit A, Art. VII (5).) The District Court for the Eastern District of California has jurisdiction over these ERISA claims because the Trust is administered in Stockton, California.

**FACTS**

7. Defendant Company is signatory to a memorandum of understanding (MOU) with International Brotherhood of Teamsters Local 533 (the "Union") effective July 1, 2019 through June 30, 2021. The MOU obligates Defendant to pay monthly contributions to the Fund on behalf of its covered employees for their health and welfare benefits. A true and correct copy of the July 1, 2019 through June 30, 2021 MOU is attached as Exhibit "B" and is incorporated by reference.

8. Defendant Company is also signatory to a Subscriber Agreement with the Fund effective July 1, 2019. The Subscriber Agreement obligates Defendant Company to be bound by the terms of the Fund's Agreement and Declaration of Trust, and to contribute to the Fund for its

employees covered by the MOU.  A true and correct copy of the Subscriber Agreement is attached hereto as Exhibit "C" and is incorporated by reference.

9.     The MOU, Subscriber Agreement, and Agreement and Declaration of Trust require Defendant Company to pay contributions to the Fund for each employee who has worked 80 hours or more in a month.  Such contributions are due the tenth (10th) day of the month (the "due date") following the month in which the hours are worked.  The Agreement and Declaration of Trust provides that if contributions are not received or postmarked within twenty-five (25) days of the due date, the Fund shall assess liquidated damages on the delinquent contributions.  Liquidated damages in an amount equal to six percent (6%) of the late contributions are owed if the contributions are received or postmarked between twenty-five (25) and forty-five (45) days after the due date, and twelve percent (12%) if they are received or postmarked more than forty-five (45) days after the due date.

10.     The Agreement and Declaration of Trust also provides that if an employer fails to pay contributions and legal proceedings are instituted to collect such contributions, in addition to liquidated damages the employer must pay the Fund interest on the delinquent contributions and the attorneys' fees and costs associated with the Fund's collection efforts.

**CLAIM FOR RELIEF**

11.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs one through nine, above, as though fully set forth herein.

12.     On or about December 30, 2019, the Fund's independent accountant informed Defendant Company that it would be conducting an audit of Defendant Company's contributions to the Fund for the period July 1, 2019 to December 31, 2019 and requested documents to perform the audit. A true and correct copy of the audit notice is attached hereto as Exhibit "D" and is incorporated by reference.

13.     On June 16, 2020, the auditor informed Defendant Company of its final audit findings and requested payment to the Fund for the amount owed totaling $50,419.33.  A true and correct copy of the audit findings is attached hereto as Exhibit "E" and is incorporated by reference.

14.     On September 17, 2020, counsel for the Fund sent Defendant Company a demand letter requesting payment to the Fund based on the auditor's findings.  A true and correct copy of the demand letter is attached hereto as Exhibit "F" and is incorporated by reference.

15.     Defendant Company did not respond to counsel's demand for payment and has not paid the amount owed as determined by the Fund's independent auditor.

WHEREFORE, Plaintiff Trustees respectfully request a judgment ordering the Defendant to pay the following to the Fund:

1.     All unpaid contributions due and owing for the period July 1, 2019 to December 31, 2019, totaling $50,419.33, according to proof;

2.     All unpaid liquidated damages now due and owing for the period July 1, 2019 to December 31, 2019, totaling $6,050.32, according to proof;

3.     Interest on the unpaid contributions, according to proof;

4.     Reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. §1132(g)(2)(D), and the Agreement and Declaration of Trust; and

5.     For such other and further relief as may be proper.

Dated:  February 2, 2021                    BEESON, TAYER & BODINE, APC


By:     /s/ Christopher O. Hammer
        CATHERINE E. HOLZHAUER
        CHRISTOPHER O. HAMMER
        Attorneys for Plaintiff TRUSTEES OF THE
        NORTHERN CALIFORNIA GENERAL
        TEAMSTERS SECURITY FUND

EXHIBIT A

# AGREEMENT AND DECLARATION OF TRUST
## PROVIDING FOR THE
## NORTHERN CALIFORNIA GENERAL TEAMSTERS SECURITY FUND

## ARTICLE I

### Establishment and Purpose of the Trust

This Trust Agreement and Declaration of Trust between certain Employers and Unions, each as defined below, originally adopted and entered into on the first day of April, 1952 and amended from time to time thereafter, establishing the NORTHERN CALIFORNIA GENERAL TEAMSTERS SECURITY FUND, is hereby reaffirmed and amended effective November 11, 2016, as follows:

The Unions and Employers, as hereinafter defined, have entered into Collective Bargaining Agreements under which the Employers are obligated to make payments into a Trust Fund in order to provide health and welfare benefits for active and retired Employees.

The Trust is therefore established to receive Employer payments and to provide Employees with health and welfare benefits, consistent with applicable laws.

Contributions made into the Trust, and income received thereon, shall be set aside specifically for the purpose of financing employee welfare benefit programs authorized by this Trust Agreement and the Plans adopted pursuant thereto, and for the legitimate expenses in connection with the establishment and maintenance of such programs, and may not be diverted to any other purpose, nor will any assets of the Trust revert to any Employer. No benefits under any program authorized by this Trust Agreement may be paid until such benefits are due in accordance with the terms and conditions of such program as provided by the Board of Trustees.

This Trust Agreement shall be binding upon the Employers and the Unions, and their successors, privies, administrators, trustees, representatives and assigns.

## ARTICLE II
### Name of the Trust

This Trust Fund shall be known as the NORTHERN CALIFORNIA GENERAL TEAMSTERS SECURITY FUND.

## ARTICLE III

### Definitions

1.      The term, "Employer," means a firm, company, employer, or Union, who is party to a collective bargaining agreement (CBA) providing for monthly contributions on behalf of its employees for welfare benefits and who has executed, with the approval of the Board of Trustees, the subscriber form attached hereto (or in whatever form is currently in use) entitled, "Subscriber Agreement, Northern California General Teamsters Security Fund."

2.      The term, "Union," means a local Union affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT), that is party to a CBA with an Employer  participating in the Northern California General Teamsters Security Fund.

3.      The term, "Employee," means any person employed by an Employer under, and within the scope of, a collective bargaining agreement, or a Subscriber Agreement, by which the Employer agrees to make monthly contributions to the Fund on behalf of said person, and any other employees of such Employer authorized by the Trustees through uniform rules to participate in a plan providing for health and welfare benefits.  The term "Employee" shall include retired employees who meet the eligibility rules of any Plan established hereunder which covers retirees.

4.      The term, "Welfare Benefits," or "Health and Welfare Benefits" means benefit payments as may be provided under a plan developed and established by the Trustees, pursuant to this Trust Agreement.

5.      The terms, "Fund" or "Trust" means Northern California General Teamsters Security Fund.

6.      The term, "Collective Bargaining Agreement" means the contract between an Employer and a Union, together with any amendment, extension or renewal of such contract, under which the Employer is required to make payments to this Trust Fund in order to provide health and welfare benefits for Employees, which contract has been approved by the Trustees.

7.      The term, "Plan" or "Plans" means the program or programs of health and welfare benefits adopted by the Trustees.

2

8.     The term, "Subscriber Agreement" means a written agreement by which an Employer affirms its obligation to make contributions to the Trust Fund and agrees to be bound by the terms and conditions of this Trust Agreement.

9.     The term, "Trustees" means the trustees of this Trust and their successors.

## ARTICLE IV

### Payments to the Fund and Eligibility

1.     Each Employer shall execute a subscriber's agreement in the form currently being used by the Fund as a condition of participation, and shall make monthly contributions on behalf of each employee in the amount specified by the appropriate collective bargaining agreement, or subscriber agreement, to the depository designated by the Board of Trustees.

2.     The monthly payment shall be paid in the time and manner prescribed by the Trustees.

3.     The trustees shall appoint an administrator, who may be an individual, partnership or corporation, and shall establish the administrative office of the Trust for the collection and receipt of contributions, for maintenance of Trust records, for receiving all communications to the Trustees, for service of process on the Trust, and for such other purposes as may be directed by the Trustees.

4.     An eligible employee shall be an employee who has worked eighty (80) hours or more in the preceding calendar month and for whom a contribution has been received for such month or becomes eligible by any other qualifications approved by the Board of Trustees and set forth in a collective bargaining agreement.

## ARTICLE V

### Trustees

The administration of the Fund shall be vested in a Board of Trustees which shall consist of equal numbers of representatives from Employers and Unions.  The Trustees shall be selected, removed, and replaced as follows:

(1)     The participating Unions shall designate a maximum of three (3) trustees to represent the Unions.  The Employers shall designate a maximum of three (3) Trustees to represent the Employers.  However, no Union official or member may serve as an Employer Trustee.  This Trust Agreement shall not be further amended to provide for a greater number of

3

trustees unless all trustees unanimously approve such amendment.   The number of Union Trustees and Employer Trustees shall at all times be equal.

(2)     The Employers and the Unions expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees as herein provided to control and manage the operation and administration of the Fund and its plans. Each of the current Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Trust Agreement and assumes the duties, responsibilities and obligations of the Trustees as created and established by this Trust Agreement and under applicable law. Any Trustee named hereafter does likewise by accepting a seat on the Board of Trustees.

(3)     A Union Trustee may be removed by unanimous vote of the other Union Trustees. An Employer Trustee may be removed by unanimous vote of the other Employer Trustees. Provided, however, that there must be at least two (2) Union Trustees or two (2) Employer Trustees, respectively, to act on the removal of a fellow Trustee.  Trustee action on removal of trustees may be in writing without a meeting or may be  taken at a regular meeting or a special meeting called for that purpose.  However, no Trustee may be removed without ten (10)  days' written notice to the Board of Trustees prior such action being taken,  which notice shall include the designation of a successor Trustee  for the  Trustee to be replaced.

A vacancy among the Union Trustees shall be filled by a majority approval of the remaining Union Trustees; a vacancy among the Employer Trustees shall be filled by majority approval of the remaining Employer Trustees.  If no Union or Employer Trustee remains to fill such vacancy the vacancy will be filled in accordance with the following procedure for filling a vacancy when the Employer or Union Trustees cannot agree on a replacement.  If a majority of Union Trustees cannot agree on a replacement to fill a vacancy, any Union Trustee may notify Teamsters Joint Council 7 of the deadlock and the Joint Council Executive Board shall designate a replacement.  If a majority of the Employer Trustees cannot agree on a replacement to fill a vacancy, any Employer Trustee may direct the Trust Administrator to notify all participating Employers of the deadlock and solicit nominations to the Board of Trustees.  If the remaining Employer Trustees are still unable to agree on a replacement to fill the vacancy, the participating Employers will be asked to vote on a replacement Trustee from among those nominated by the Employers.  Ten days' written notice must be given by either the Union Trustees or Employer

Trustees to their Labor or Management counterparts of their intention to fill a vacancy on the Board of Trustees and the name of their intended replacement.

(4)     The Trustees shall schedule regular meetings by agreement of all the Trustees in attendance at a previous regular meeting, or if they wish to schedule or re-schedule a regular meeting otherwise, they shall do so by unanimous agreement of the Trustees, provided, that no meeting shall be held on less than two (2) weeks written notice to all the Trustees except by their unanimous agreement. Special meetings may be called by any two (2) Trustees, also on no less than two (2) weeks written notice to all the Trustees, except by unanimous agreement of all the Trustees. The Trustees are also authorized to take action without an in-person meeting, provided that the Trustees unanimously agree to a meeting by telephone or video conference, or agree unanimously to the proposed action in writing without a meeting, or agree unanimously to the proposed action through a poll by the Trust administrator or legal counsel.

(5)     Any Trustee may resign by giving written notice to the Board of Trustees. Any Trustee who fails to attend three (3) consecutive meetings may be deemed to have resigned by a vote of the remaining Trustees.

(6)     Should the Trustees, the Union Trustees, or the Employer Trustees, reach a deadlock on any matter subject to their determination, they shall select a neutral person to act as an impartial umpire to decide the controversy.   If the Trustees fail to agree within ten (10) days, any one or more of said Trustees may petition the United States District Court for the Eastern District of California, Northern Division, for the appointment of such impartial umpire.

(7)     A quorum of the Board of Trustees for the transaction of business shall consist of fifty percent (50%) of the membership of the Board of Trustees, providing that there is representation from the Employer Trustees and the Employee Trustees. In the determination of all matters coming before the Board of Trustees for consideration, the Trustees representing the Employers shall vote as a group having one (1) vote and the Trustees representing the Employees shall vote as a group having one (1) vote. The vote of each side shall be determined by majority vote of each side.

(8)     No Trustee shall receive remuneration for services rendered as a Trustee. However, each trustee shall be entitled to payment or reimbursement to cover the reasonable and necessary expenses involved in his or her performance of the duties of a Trustee.

(9)     In the event of death, resignation, refusal or inability to act on the part of any one or more of the Trustees, the remaining Trustees shall have all the powers, rights and interests of this Trust and shall be charged with its duties, provided that at least one Employer Trustee and one Union Trustee shall be required to act in any case.

(10)     Any successor Trustee appointed hereunder shall, upon appointment and acceptance, and without any further act, succeed to all the duties, rights, titles and powers, whether discretionary or otherwise, of his predecessor.

## ARTICLE VI

### Powers of the Board of Trustees

The Board of Trustees shall receive and hold all sums of money payable to the Fund and use such money for the sole purpose of providing welfare benefits for the employees and their dependents by a plan or plans authorized by the Trustees and for paying the expenses of administering such Fund.  The board of Trustees shall have full power to administer the Fund for such purpose.  Without limiting the general powers of the Board of Trustees, it is expressly empowered to do any of the following:

(1)     To deposit funds in insured accounts with any Banks or Savings and Loans doing business in the State of California as the Trustees shall select, and to make investments in accordance with an investment policy established by the Trustees in writing from time to time, as permitted by the Employee Retirement Income Security Act of 1974, as amended.   All income from such deposits shall be set aside for the exclusive purposes of this Trust.  Withdrawals from the Fund for the payment of claims may be made only on the signature or facsimile signature of the administrator of the Fund in accordance with procedures established by the Board of Trustees.  All other withdrawals from the Fund may be made only upon the signature of two (2) Trustees, provided that withdrawals shall be upon the signature of at least one (1) Trustee representing the Employers and one (1) Trustee representing the Union.

(2)     To provide welfare benefits for the employees by procuring a policy or policies of group insurance, prepaid health care plans, and/or by paying some or all such benefits directly to providers  from the Trust Fund through a plan of self-funding.  The Trustees are further empowered to do any and all acts and things necessary or advisable to effectuate such provision of benefits subject to all applicable laws.

6

(3)     To provide for the administration of said Fund and for that purpose to provide all facilities, rules and regulations, audits, personnel and services deemed necessary or advisable for such purpose.

(4)     To delegate to the extent authorized by law, any of the powers and duties of the Trustees to any agent or employee engaged by them or to any one or more of the Trustees themselves. The Trustees shall have the power to appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of the Plan in accordance with an investment policy approved by the Trustees. The Trustees or any individual, to whom the Trustees delegate fiduciary responsibilities under this Trust Agreement, may employ one or more persons to render advice with regard to any fiduciary responsibilities.

(5)     To pay, or cause to be paid, from the Fund, any and all expenses necessarily incurred in connection with the administration of said Fund. Such payments may include, without limitation, the reimbursement of reasonable and necessary expenses to Trustees incurred in the performance of their duties as Trustees.

(6)     To maintain any and all actions or legal proceedings necessary for the protection of said Fund and the procurement of the employees' benefits contemplated thereby, and to compromise any claims or actions brought by, or against, the Trust. Costs and expenses of any action, including attorneys' fees, brought by or against the Trust, the Trustees, or any of them, shall be paid from the Fund except as may be limited by law.

(7)     To formulate and promulgate any and all necessary rules and regulations to facilitate the proper functioning of this Trust, provided the same are not inconsistent with this Trust Agreement and are in accordance with applicable law.

(8)     To determine all questions of eligibility of the employees to receive the benefits of said Fund, and such determination shall be final and binding upon Employers, Unions and employees.

(9)     To procure fidelity bonds required by law and other insurance covering claims against the Fund based upon conduct of any Trustee, trust employee, or agent, or anyone providing services to the Trust. Such insurance shall provide for recourse against any person for whose conduct the Trust may be liable, in accordance with the Employee Retirement Security Act of 1974. Nothing herein shall be construed to prohibit any Trustee or other person in a fiduciary relationship under the Trust from purchasing insurance to cover liability for his own

7

account, or a Union or Employer from purchasing insurance to cover liability of one or more persons who serve in a fiduciary capacity under the Trust.

(10)     To interpret the provisions of this Trust Agreement, the Plan of Benefits, and the rules and regulations of the Trust, and the terms used therein, and any construction adopted by the Trustees in good faith shall be binding upon the Employers, Unions, employees and beneficiaries of the Plan.

(11)     Any Employee or other beneficiary covered by any Plan of the Fund whose claim is denied, in whole or in part, by the administrator of the Fund shall be entitled to appeal such denial to the Trustees, except for a denial based upon the failure of the Employee's Employer to make such contributions as required to provide eligibility for the Employee.  Any such appeal shall be made in writing and shall be delivered to the administrator within one hundred eighty (180) days of the denial.   The administrator shall submit the matter for disposition by the Trustees, who may delegate to any two (2) Trustees, including one (1) Labor and one (1) Employer Trustee, the authority to decide appeals in between regular or special meetings of the Trustees.

(12)  To take any action deemed appropriate by the Trustees, in their sole discretion, to effectuate the purposes of the Trust, to provide benefits to the participants and beneficiaries, and to protect the stability and financial integrity of the Trust.

## ARTICLE VII
### Collection of Employer Contributions

(1)     All Employer Contributions required by a collective bargaining agreement or by a subscriber agreement to this Fund shall be made monthly in accordance with its terms and shall be due and payable not later than the last day  of the month following the month in which the covered work was performed for the Employer, or on such other due date as shall be adopted by the Trustees.

(2)     An Employer contribution shall be deemed to be delinquent if not mailed to the place designated for receipt of contributions and postmarked on or before the due date as provided in Section (1) above.  If payment is delinquent, the Employer shall be notified of the delinquency in writing.

8

(3)     The parties recognize that the regular and prompt payment of Employer contributions to the Fund is essential to the maintenance and effectiveness of the Fund and that it would be extremely difficult and impractical to fix the actual expense and damage to the Fund which would result from the failure of an individual Employer to make the required payment in full within the time above provided.  Therefore, the amount of damage to the Trust Fund resulting from any such failure is agreed as follows:

(a)     the sum of six (6) percent of the amount of the payments due or $25.00, whichever is greater, for all payments which are more than twenty-five days and less than forty-six days past due; and

(b)     the sum of twelve (12) percent of the amount of the payments due, for all payments which are more than forty-five days past due.

These amounts shall become due and payable to the Fund as liquidated damages and shall be in addition to interest, legal fees and costs reasonably expended by the Trust in collection.  Interest shall be assessed from the 60th day following the due date for all contributions.  Six (6) percent liquidated damages as described above shall be assessed when billing for delinquencies discovered through an Employer payroll audit, if the bill remains unpaid for twenty (20) days after the auditor's report has been finalized.  If the delinquency remains unpaid for forty (40) days or more, liquidated damages of twelve (12) percent shall apply.

(4)     The Trustees may, but shall not be required to, institute legal proceedings to collect delinquent Employer contributions, liquidated damages, expenses of auditing and attorneys' fees.  Such proceedings may be instituted by the Administrator of the Fund if he or she has received general or specific instructions from the Trustees to do so, and may be brought in the name of the Trustees or the Fund, or the claim may be assigned to a third person for collection.

(5)     The county or the United States District Court district in which the Employer contribution is payable or in which the Trust is administered shall be a proper county or federal court district in which the Trust may institute legal proceedings to collect delinquent Employer contributions.

(6)     If an Employer becomes delinquent in paying any amounts required under this Article, it shall reimburse the Fund for interest on any delinquent contributions, all expenses of auditing and reasonable attorneys' fees incurred by the Fund in connection therewith, if legal

9

proceedings are instituted, it being recognized that the extent of auditing or legal services necessarily incurred in the collection of required Employer contributions may in certain cases have no relation to the fact that the amount of the delinquency in question is relatively small.

(7)     The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Trust Fund. The Board may require any Employer, and the Employee or Union to submit to it any information, data, reports or documents reasonably relevant to and suitable for the purposes of such administration, and make them available in the State of California or the State of Nevada. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any such information, data, reports or documents. Upon request in writing from the administrator, any Employer will permit a Fund auditor selected by the Board to enter upon the premises of such Employer during the business hours at a reasonable time or times, and to examine and copy such books, records, papers, or reports of such Employer as may be necessary to determine if the Employer is making prompt payment of all sums required to be paid by him or it to the Trust Fund.

(8)     In the event that an Employer payroll audit is performed outside of the states of California or Nevada, the Employer shall pay costs incurred by the Trust auditor for transportation, meals and lodging in connection with the audit.

(9)     In the event an audit pursuant to this section determines that Employer underpayments to the Trust Fund exceed $3,000.00 or five percent of the required contributions for the period audited, whichever is greater, the Employer shall be responsible for the full cost of the Audit (in addition to the underpayments, liquidated damages and interest attributable thereto).

(10)     All payments received from a delinquent Employer shall be applied in the following order:  first, to pay any liquidated damages, interest or collection costs then owing; second, to pay the contribution for the earliest month owed; thereafter, to pay contributions for each subsequent month owed in chronological order.

## ARTICLE VIII
### Liability of Trustees

(1)     Each of the Trustees shall be protected in acting upon any paper or document believed by him or her to be genuine and to have been made, executed or delivered by the proper

parties purporting to have made, executed or delivered the same, and shall be protected in relying and acting upon the opinion of legal counsel in connection with any matter pertaining to administration or execution of this Trust, subject to the applicable standard of judgment and care as set forth in the Employee Retirement Income Security Act of 1974.

(2)    The Trustees may rely upon an instrument in writing purporting to have been signed by, or upon telegrams or other electronic transmissions purporting to have been transmitted by, a majority of the Trustees, as conclusive evidence of the fact that a majority of the Trustees have duly taken the action stated to have been taken in such instrument or telegram, subject to the applicable standard of judgment and care, as set forth in the Employee Retirement Income Security Act of 1974.

(3)    No Trustee shall be personally responsible for any liability or debts of the Fund contracted by the Trustees, or for the non-fulfillment of contracts, subject to the provisions of the Employee Retirement Income Security Act of 1974 which prescribe the fiduciary responsibilities of trustees. Nothing in this Trust Agreement or in any plan or contract entered into hereunder shall be construed to broaden the personal liability of any Trustee or any other person in the position of a fiduciary under this Trust beyond the scope of liability applicable to fiduciaries as provided in the Employee Retirement Security Act of 1974.

(4)    The Trustees and each of them shall have no liability for any act or omission to act of any kind done, made or suffered by the Trustees, or any of them, in the course and scope of their duties as herein described, except any liability resulting from breaches by said Trustees of the fiduciary duties owed by them in accordance with applicable law. The Trust shall exonerate, reimburse, indemnify and save harmless each Trustee individually, and the Trustees collectively, to the extent permitted by applicable law, against any and all expenses and liabilities arising out of their trusteeship or which may be authorized by the Trustees, and the Trustees, individually or collectively, or the Fund. In this connection, the Trustees shall be privileged to select and employ legal counsel to defend them, or represent them in the proceeding. If a Trustee is found guilty by the final determination of a court of competent jurisdiction of breaching the fiduciary duties owned by him in accordance with applicable law, he shall be obligated to reimburse the Trust for any sums expended on his behalf pursuant to the preceding sentence. The Trustees shall not be liable for any act or omission of any agent or employee of the Trustees selected with reasonable care, except as provided by applicable law. The Trustees

11

shall not be liable to the Union, the Employer or any Employee or any other person for any action done, made or suffered by them, or omitted by them in good faith, except as otherwise provided by applicable law.

## ARTICLE IX

### Rights of the Parties in the Fund

(1)     No Employer shall be liable for any payment to the Fund required of any other employer, and the Union shall not be liable for any such payments required of any Employer. Neither the Employer nor the Union shall be liable for any welfare benefits as contemplated by this Agreement.  Neither the Union, nor any Employer, nor any employee shall have any individual right, title or interest in the money or property to the Fund.  No Employer shall have any right to the return of any money paid by him or it into the Fund, and no employee shall have any right, privilege or option to receive any cash or other consideration from the Fund in lieu of the benefits provided under the welfare plan established or procured by the Board of Trustees.

(2)     The Trust has been established for the sole and exclusive purpose of providing benefits for Employees or their beneficiaries in accordance with the provisions of the Plan.  No persons, whether Employees, beneficiaries, or otherwise, will have any interest in the Trust Fund except as expressly provided in the Plan or this Trust Agreement.  At no time will any assets of the Trust Fund be used for, or diverted to, purposes other than the exclusive benefit of Employees, beneficiaries, or other persons who may be entitled to receive benefits under the Plan, nor will any assets of the Trust Fund revert to or become the property of an Employer except as follows:

A contribution made by an Employer by mistake may be returned by refund or credit only to the extent it will cause no loss to the Trust Fund or adversely impact employer contribution rates which were set in reliance on the mistaken contributions.  All future liabilities on account of mistaken contributions will be deducted from any refund or credit requested.  Such liabilities include, but will not be limited to, prepaid administrative and professional services for vendors contracting with the Fund and payments to such vendors who have renewed a contract with the Fund more favorably than they would have but for the mistaken contributions. Administrative costs, the costs of reviewing records in connection with the refund, auditing fees, legal fees, and the amount of any benefits paid in reliance on the mistaken contributions --

12

including claims incurred but not reported (IBNR) or overlooked at the time of the refund -- will also be deducted from the amount of any refund or credit.

Except as provided above, in no event shall any assets of the Trust Fund revert to or become the property of an Employer.

## ARTICLE X
### Duration

The parties contemplate that new collective bargaining agreements will be entered into continuing the Trust Fund hereby created, and intend that this trust agreement shall continue in effect indefinitely. However, in the event this Trust is terminated, any and all money remaining in the Fund after the payment of insurance premiums and other expense theretofore incurred, shall be used for the procurement of welfare benefits by a plan of group insurance.

## ARTICLE XI
### Annual Audit

The Board of Trustees shall cause to be made annually an audit of the Fund by a qualified certified public accountant selected by the Trustees, which shall be made available for inspection by interested persons at the principal office of the Fund and shall be in accordance with the requirements of the Employee Retirement Income Security Act of 1974.

## ARTICLE XII
### Governing Law

The interpretation of this Agreement, and the administration of the Trust created hereby, shall be governed by federal law, as applicable, and where federal law is not applicable, by the laws of the State of California.

## ARTICLE XIII
### Amendments

This Trust Agreement may be amended in writing by the Trustees following a vote pursuant to Article V, Section 7 of this Agreement, without notice to any person or persons, provided that no amendment shall alter the exclusive purpose of the Fund to provide a plan of welfare benefits for employees, and further provided that the employers will receive thirty (30)

13

days' notice of a proposed amendment in the case of any substantive amendment.  A copy of each amendment shall be sent to each Union and each Employer party to the Trust Fund.

**EMPLOYER TRUSTEES:**                    **UNION TRUSTEES:**

Michael Carnefix                          Dave Hawley

Ida Hailstone                             Chester Suniga

Rob Pina                                  Pete Nunez

14

EXHIBIT B

_21681

# Keolis Trust documents for

# Agreement named:

# MV Transportation, Inc.

# (Division – 190 Reno)
# Road Supervisors

# and

# Teamsters Local Union No. 533, affiliated with the International Brotherhood of Teamsters

Memorandum of Understanding

Reno, Nevada

This Memorandum of Understanding is entered into by, and between, the International Brotherhood of Teamsters Local 533 ("Union") and Keolis Transit America, Inc. ("Company") (collectively "parties").

WHEREAS, the Union and MV Transportation (MV) are party to two current collective bargaining agreements which expire June 30, 2021, for the stated classifications at the Reno Division 190, as well as a memorandum of agreement (collectively "Contracts").

WHEREAS, Keolis Transit America, Inc. was awarded the contract by Regional Transportation Commission of Washoe County (RTC) that will commence on July 1, 2019 and covers the work currently being performed by MV Transportation employees, covered by the above mentioned bargaining agreements under the jurisdiction of the Union;

WHEREAS, the Company is voluntarily recognizing the Union as the sole exclusive bargaining representative for all employees set forth in the aforementioned collective bargaining agreements;

WHEREAS, matters of employment relations shall be continued at not less than the level in effect at the time of the signing of this Agreement as specifically provided for in the three (3) signed contracts referenced herein; no other agreements implied or written are recognized. Any changes in existing employment relations during the term of the Agreement shall be mutually agreed upon between the Company and the Union.

WHEREAS, Company has certain obligations that, failure to comply with constitute breach of contract, including hiring requirements and standards of conduct; but it shall not conflict with the terms and conditions in the Collective Bargaining Agreements mentioned above;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties agree:

1.  This MOU shall expire with the ratification and execution of a new agreement or no later than the expiration of Contracts on June 30, 2021. Both parties to this agreement shall meet no later than June 30, 2020 to begin negotiations on new collective bargaining agreements.

2.  Except to the extent modified herein, the parties agree that all current contracts shall continue in full force and effect at the time of startup and prospectively through June 30, 2021 or when a new contract is ratified whichever occurs first.
    The Contract(s) referenced are entitled:
    I. CBA: Operators, Dispatch, Mechanics/Maintenance, CSR, Parts, Techs - July 1, 2017-June 30, 2021
    II. CBA: Road Supervisors - July 1, 2017-June 30, 2021
    III. MOA: "Operators CBA" and "Supervisor CBA" (dated August 29, 2018)

3.  Both parties agree to meet within 120 days of startup to discuss run cut (bid schedule) proposals to improve efficiency of the operations and substantive ways to decrease turnover.

4.  During the pendency of this MOU, the parties agree that the Company shall assume to Union the obligations of MV, and the Union shall owe to the Company same obligations owed to MV, unless specifically modified in this MOU.

5.  The Company shall hire all eligible bargaining unit employees covered under the contract(s).  Eligibility

IBT 533 RENO, Keolis Transit America, Inc., MOU page 2 of 3

for hire includes but is not limited to active employees employed on June 30, 2019; and that complete an employment application; and a signed acceptance of a job offer by the deadline determined prior to startup; and who meet Company's minimum hiring standards relating to background check, professional credentials, and drug testing. The Company will employ discretionary recruiting bonuses to attract and retain employees.

6. All bargaining unit employees under this agreement will join the bi-weekly Keolis payroll cycle that closes on Saturday. (For example: June 9 – June 22, pay date June 28). All employees will have the option of being paid only by direct deposit, paycheck or electronic pay cards.

7. Mandatory training hours required by the client, even those hours incurred prior to July 1, 2019, will be paid on the first full payroll cycle after startup and will be limited to 8 hours of regular time for each employee in verified attendance. Additional hours of training will be provided by job title in accordance with the client contract and/or client agreements.

8. Retirement plans:
   a. The current union retirement benefit(s) known to Keolis and agreed to under this contract is outlined below; the parties agree that no other plans are recognized and no other plans will be offered:
      i. Road Supervisors Contract: *Teamsters National Supplemental 401(k) plan* outlined in Article 24, page 37.
      ii. Driver/Operators, (et. al.) Contract: *Teamsters National Supplemental 401(k) plan* outlined in Article 24, page 43; and *Teamsters Pension Plan* outlined in Article 25, pages 43 – 45.

9. Health and Wellness which are union:
   a. The current health and wellness benefit(s) known to Keolis and agreed to under this contract is outlined below, the parties agree that no other plans are recognized and no other plans will be offered:
      i. Road Supervisors Contract: *Northern California General Teamsters Security Fund* outlined in Article 23.9, page 35-37.
      ii. Driver/ Operators, (et. al.) Contract: *Northern California General Teamsters Security Fund* outlined in Article 23, page 41-43.

10. Group Life:
   a. The current group life benefit(s) known to Keolis and agreed to under this contract is outlined below; the parties agree that, the vendor will be chosen by the Company, and that no other plans are recognized and no other plans will be offered:
      i. Road Supervisors Contract: Consistent with Article 33, page 48 Keolis will provide "fifty thousand ($50,000) dollars group life insurance for each non-probationary employee" from a vendor determined by Company.
      ii. Driver/ Operators, (et. al.) Contract: Consistent with Article 34, page 61 Keolis will provide "fifty thousand ($50,000) dollars group life insurance for each non-probationary employee" from a vendor determined by Company.

11. Short-Term Disability:
   a. The current short-term disability benefit(s) known to Keolis and agreed to under this contract is outlined below; the parties agree that, the vendor will be chosen by the Company, and that

IBT 533 RENO, Keolis Transit America, Inc., MOU page 3 of 3

no other plans are recognized and no other plans will be offered:

i. Road Supervisors Contract: Consistent with Article 22.4, page 33 Keolis will provide "disability insurance at no cost to employees" from a vendor determined by Company.

ii. Driver/ Operators, (et. al.) Contract: Consistent with Article 22.6, page 40 Keolis will provide "disability insurance at no cost to employees" from a vendor determined by Company.

12. Modifications prior to contract expiration: Parties agree that should either party desire to change this Agreement or alter it in any way they shall give the other party written notice prior to the Agreement's expiration date. Such notice shall state either the intent to negotiate amendments or to negotiate a new Agreement. The Agreement shall remain in full force and effect during negotiations on a replacement Agreement through June 30, 2021 or when a new contract is ratified whichever occurs first .

13. Keolis agrees to provide sick leave accruals, vacation accruals, floating holiday accruals and any other economic items as outlined in the Collective Bargaining Agreements starting July 1, 2019 prospectively.

14. Employee Handbooks: At risk of default of the RTC Contract the Company shall provide, and employees must adhere to, an Employee Handbook and Operator Manual (collectively "Handbooks") that contain a standards of conduct provision approved by the RTC. All employees will receive and be asked to sign acknowledging these policies and procedures ("Handbooks"). To the extent that any policy or procedures in the Handbooks and Operators Manual explicitly conflicts with the collective bargaining agreement(s), the Collective Bargaining Agreements shall prevail. The Parties agree that policies, rules or provisions covered in Handbooks, not addressed in and not in explicit conflict with the Contract(s), are enforceable by Company; and all employees performing work must adhere to the Company's conduct standards; any deviation from the RTC-approved standard of conduct by any employee shall be subject to the appropriate discipline and subject to the grievance process.

15. From time to time, Company will utilize discretionary bonuses to reward good attendance and/or safety conduct.

16. In the event that MV cashes out any accrued Vacation, Keolis Transit America shall not be liable for the costs associated with those benefits. Upon proof of scheduled but unused vacation approved under the last vacation bid by MV, the Company will grant such vacation as an unpaid non-chargeable absence.

17. Keolis will grant FMLA leave to new hires who have met the minimum qualifications for employment, provided an employee can provide sufficient medical documents certifying their leave is qualifying with a probable return date.

18. Keolis acknowledges that employees may have selected and scheduled Floating Holidays with MV Transportation. With sufficient proof, Keolis will honor the previously approved and scheduled Floating Holidays. Payment regarding the Floating Holidays is outlined in the Collective Bargaining Agreements.

All parties hereby agree to be bound by the terms of this MOU. Parties agree that this MOU is a legally enforceable document and that any dispute between the parties concerning this MOU shall be subject to the dispute resolution procedures set forth in the existing MV CBA.

IN WITNESS THEREOF, the duly chosen representatives of the parties hereby affirm that they have authority to enter into this Agreement on behalf of themselves and their principals and affix their signatures.

FOR THE COMPANY
Keolis Transit America, Inc.

FOR THE UNION
IBT Local 533



IBT 533 RENO, Keolis Transit America, Inc., MOU page 4 of 3

6-11-19

**Michael James**                    Date
Director, Employee & Labor Relations

06-10-2019

**Gary Watson**                    Date
President

# EXHIBIT C

Plan: _Select Plus_           Approximate Number of Participants   _190_

For Plan E Plus and all Select Plans
Please select coverage options available to employees:
- [X] All options available
- Full coverage (Med, Dent, Rx, Vis)
- ___ Med/Rx only
- ___ Dent/Vis only
- ___ Opt Out

_- 21680_

## NORTHERN CALIFORNIA GENERAL TEAMSTERS SECURITY FUND

### SUBSCRIBER AGREEMENT

THIS AGREEMENT is entered into this _8th_ day of _June_ , 20_19_ , by and among _Keolis Transit America_ , and whose address is _2050 Villanova Drive, Reno, Nevada 89502_ , hereinafter referred to as the "Employer" and Teamsters Local No. _533_ , affiliated with the IBT, hereinafter referred to as the "Union," and the Northern California General Teamsters Security Fund.

WHEREAS, the parties have entered into a labor agreement covering certain employees of the Employer; and

WHEREAS, the parties hereto desire to enter into a mutual welfare agreement for benefit of the said employees;

THEREFORE, IT IS MUTUALLY AGREED as follows;

### I.

The Employer hereby adopts the Agreement and Declaration of Trust Providing for the Northern California General Teamsters Security Fund, hereinafter referred to as the "Fund," and agrees to be bound by the terms thereof. The Employer hereby grants Power of Attorney to the Employer Trustees now in office, or their successors, to administer the Fund as the representatives of the Employer and with full authority to act for the Employer in the administration of the Fund.

The Union hereby adopts the Agreement and Declaration of Trust Providing for the Northern California General Teamsters Security Fund, hereinafter referred to as the "Fund," and agrees to be bound by the terms thereof. The Union hereby grants Power of Attorney to the Union Trustees now in office, or their successors, to administer the Fund as the representatives of the Employer and with full authority to act for the Union in the administration of the Fund.

### II.

Commencing the first day of _July_ , 20_19_ , and payable between the first and tenth day of each month thereafter, the Employer shall contribute each month the amount specified by the Trustees to maintain benefits as provided by the collective bargaining agreement for each covered employee subject to the collective bargaining agreement (CBA). As a general rule, all employees covered by the same collective bargaining agreement shall be covered under the same Plan. Covering different classifications of employees in different plans of the Fund will be permitted only with the express agreement of the Trustees. If the CBA limits the Employer's share of the required contribution, the Employer shall deduct the remaining amount

1

from the paychecks of eligible employees and remit it to the Trust.  If non-bargaining unit employees are accepted as participants by the Trustees of the Fund pursuant to uniform rules and regulations, they shall remain participants in the Fund for the term of the CBA and the Employer shall contribute for them the same amounts and in the same manner as for bargaining unit employees, subject to the attached Rules and Regulations For Non-Bargaining Unit Participation.

III.

These sums are to be deposited in the Fund for the purpose of furnishing a health and welfare plan.  If the Employer fails to make proper contributions by the 10th of each month, it shall be considered as delinquent and shall be notified by mail.  If payment is not received by the Fund when due, the Trustees of the Fund may assess certain additional amounts as liquidated damages as well as interest and any reasonable attorneys' fees incurred by the Trust in collecting delinquent contributions.

The amount due to the Trust Fund resulting from any such failure to remit timely is agreed as follows:

      (a)     the sum of six (6) percent of the amount due or $25.00, whichever is greater, for all payments which are more than twenty-five days and less than forty-six days past due (after the 10th of the month) and

      (b)     the sum of twelve (12) percent of the amount due, for all payments which are more than forty-five days past due (after the 10th of the month).

The Employer will make available to the Trustees, or their agents, all books, records and papers necessary for the Trustees to verify that the required amount of contributions have been made.  Such books and papers shall be made available in California, or the Employer will pay the out-of-state travel costs of the Trust's agents.  The Employer will reimburse the Trust Fund for any audit expenses in the event that delinquencies are discovered.

IV.

The term "covered employee" as used in Paragraph II, shall mean any employee who has worked eighty (80) hours or more in the preceding calendar month or who becomes eligible by virtue of any other qualifications approved by the Trust and set forth in a collective bargaining agreement.

V.

This Subscriber Agreement shall remain in full force and effect at all times during which the Employer is obligated, by contract or by law, to continue participation in the Fund.  Accordingly, this Subscriber Agreement shall continue in effect during negotiations of the parties for a successor CBA.  During such negotiations the Employer agrees to make contributions to the Fund in the manner provided herein.  The Employer may revoke the Subscriber Agreement by sending written notice thereof by mail to the Union and the Fund Administrator not less than thirty (30) days prior to the date upon which the Employer desires to make such revocation effective, which in no event shall be during the term of any collective bargaining agreement between the parties or written extension thereof, or prior to an impasse in negotiations for a successor CBA.

VI.

The administration office of the Fund shall be Delta Fund Administrators, 1234 West Oak Street, Stockton, California 95203.

## VII.

The Employer makes the following election regarding the participation of non-bargaining unit employees:

_____  Yes, non-bargaining unit employees shall participate in this Plan.  Please review and sign the Rules and Regulations for Non-Bargaining Unit Participation on the following page.

_✓_____  No, non-bargaining unit employees shall not participate in this Plan.

Keolis Transit America.
COMPANY

By _Michael Perry_

_Director - Labor._
Title

_6/19/2019._
Date

Teamsters Local 533
UNION

By _____

_President_
Title

_6/19/2019_
Date

Accepted on _June 19_, 20_19_, on behalf of the Board of Trustees of the Northern California General Teamsters Security Fund:

_____
Administrator

3

**Lisa Moreno**

| | |
|---|---|
| **From:** | Kim Brown |
| **Sent:** | Wednesday, June 19, 2019 2:45 PM |
| **To:** | Marena Henne; Lisa Moreno; Leanne Hollingsworth; Jackie Green (Jackie.Green@delapro.com) |
| **Cc:** | Leslie Hirschfield; Delia Alcala |
| **Subject:** | FW: Keolis Transit Subscriber Agreements and MOU for both CBA's |
| **Attachments:** | 6-11-19 IBT533 -Keolis MOU Executed.pdf; 6-19-19 Keolis Signed NCGTSF Trust Subscriber Agreement Road Supervisors.pdf; 6-19-19 Keolis Signed NCGTSF Subscriber Agreement Operators Maintenance Dispatch Customer Service Agreement.pdf |

As I may have mentioned previously,  MV Transportation has lost the contract with the Regional Transportation Commission (RTC) of Washoe County and Keolis Transit will take over as of July 1.  We will either need to change the name and contact information for the current employers or set up new employers and move the current employees over.  The current employer numbers are  75-21680 & 75-21681.  Attached are signed Subscriber Agreements and an MOU, which states that Keolis will maintain the current benefits and other provisions of the existing CBA.  I also requested a billing contact.  It is as follows:

Aaron Hitchcock, Payroll Supervisor
310-981-9500 x132
6053 Century Blvd, Suite 900
Los Angeles, CA 90045


Let me know if you need any additional information in order to process this change.

Thank you-
Kim


**Kimberley Brown**
Vice President
Office: 209.940.5118 | Mobile: 209.601.4719 | Fax: 209.940.5145 | Email: KBrown@deltafund.com

**Delta Fund Administrators**
Mailing Address: P.O. Box 2330 | Stockton, CA 95201

All information contained in this message via email is intended solely for the personal and confidential use of the recipient named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Gary Watson [mailto:gary@teamsters533.org]
**Sent:** Wednesday, June 19, 2019 12:01 PM
**To:** Kim Brown
**Cc:** Leslie Hirschfield; Michael James
**Subject:** Keolis Transit Subscriber Agreements and MOU for both CBA's

Hi Kim,

# EXHIBIT D

*Employer*
## AUDITING SERVICES

P. O. BOX 869, STOCKTON, CA 95201  •  (209) 948-8483

December 30, 2019

Keolis Transit
Attn: Aaron Hitchcock / Kate Hudson *[handwritten: / Jackie Sharpe]*
6053 Century Blvd., Suite 900
Los Angeles, CA 90045     *[handwritten: 2050 Villanova Dr Reno]*

Employer Number: 075-21680 & 075-21681

Dear Contributing Employer:

The Trustees of the Northern California General Teamsters Security Trust have contracted with Employer Auditing Services to perform testing of the payroll records of all contributing employers to determine that contributions for the Health and Welfare benefits have been properly paid. This testing is required by ERISA.

Please contact me as soon as possible <u>via e-mail</u> or at 209-607-5475 to set up an on-site appointment for the purpose of testing your contributions for the Health and Welfare benefits for the period 7/1/19 to current.

To expedite the testing, please have the following items, for the entire testing period, available before the scheduled appointment date:

1. **Monthly hour summaries which show hours worked/paid by month to facilitate accurate benefit reporting and/or payroll registers which show hours worked/paid by month. (by alpha).**
2. **California state quarterly payroll tax returns, including the list of employee names attached to the (DE-9) or (DE-3). If unavailable, please provide other quarterly reports.**
3. **Monthly billing statements to Delta Health Systems.**
4. **A listing of names to include job titles & hire dates of employees that are reported to the Trust (by alpha).**
5. **Time cards for 2 consecutive weeks in the most recent quarter.**
6. **A current Collective bargaining agreement, covering the employees who are reported to the Trust.**
7. **A listing of new hires and terminated employees for the testing period to include hire and terms dates. (by alpha)**
8. **A Leave of Absence spreadsheet or other documentation that lists the employee's name, start date, return to work date and type of leave taken for the testing period.**

Thank you for your prompt attention to this matter.

Sincerely,

*Lisa Moreno* *[handwritten signature]*          *[handwritten: 1981 Terminal Way Reno]*

Lisa Moreno / Auditor
Employer Auditing Services
209-940-5130 / cell 209-607-5475
lmoreno@deltafund.com

❋  *EMPLOYEE BENEFIT PLAN PAYROLL AUDITING*  ❋

EXHIBIT E



June 16, 2020

Keolis Transit
Attn: Aaron Hitchcock / Kate Hudson / Jackie Sharpe

Re:   Northern California General Teamsters Security Trust
      Employer #: 075-21680

Dear Ms. Hudson:

The testing made by this office of your records to determine the propriety of contributions to the above Trust is complete.

Recently, a draft of our findings was sent to you.  After providing additional information, David Cantrell's premium has been removed and Ricardo Garcia-Moreno has been adjusted from employee + child to employee only coverage. We will now send the final report to the Board of Trustees.

Our records now indicate a total due of $50,419.33.

Please remit payment within 14 days payable to Northern California General Teamsters Security Fund and mail to PO Box 2300 Stockton CA 95201 Attn: Charissa Pryor.  Please attach a copy of this letter with payment.

The Board of Trustees has provided that liquidated damage fees should be applied if the total amount due is not paid within the specified time.

Thank you for your cooperation in this Audit.

Sincerely,

Lisa Moreno
Employer Auditing Services
209-607-5475
Lmoreno@deltafund.com


Enclosures
cc:   Northern California General Teamsters

**Keolis Transit - Operations - 075-21680 eff 7/1/19**
**Summary of Discrepancies**

** Over & Under payments are only through November 2019. Leanne added December forward (no penalties accessed Dec - current)

| Employee Name | ID# | Month of Elig | Premium Payment | Vendor Fees paid in error | Claims Paid in error | Over/Under Payment | Type of Discrepancy | Comment |
|---|---|---|---|---|---|---|---|---|
| Alvarez, Teresa | 075-70835 | Sept 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| Berg, Troy | 075-66875 | July - Aug 2019 | $0.00 | | | $0.00 | 1 | opt out |
| Clark, Michael | 075-61325 | July - Aug 2019 | ($1,484.00) | $227.10 | | ($1,256.90) | 3 | 6/10/19-hire |
| Cantrell, David | 075-27143 | Aug - Dec | $0.00 | | | $0.00 | 4 | Aug-Dec=opt out /Jan-current FC single |
| Danielski, Theodore | 075-65581 | July 2019 - current | $3,710.00 | | | $3,710.00 | 2 | full coverage / ee only |
| Duffy Torrez, Yolanda | 075-55426 | July 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| Farrell, Jonathan | 075-72785 | July, Sept 2019 - current | $6,660.00 | | | $6,660.00 | 2 | full coverage / family |
| Fisher, Darrell | 075-41268 | July - Aug 2019 | $0.00 | | | $0.00 | 2 | opt out (in 2019 only) |
| George, Pamela | 075-28123 | Sept 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| Garcia-Moreno, Ricardo | 075-52342 | July 2019 - current | $3,710.00 | | | $3,710.00 | 2 | full coverage / ee only |
| **Hall, Wesley** | **075-38624** | **Nov 2019 - current** | **($742.00)** | **$113.55** | | **($628.45)** | **1** | **term 11/1/19 (adj for Nov)** |
| Hallam, Evan | form rec'vd | July 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| **Harrison, Ketley** | **075-68038** | **Dec 2019 - current** | | | | **$0.00** | **2** | **9/30/19-hire , FC / ee+child** |
| Henderson, Sierra | 075-25914 | July 2019 - current | $3,710.00 | | | $3,710.00 | 2 | full coverage / ee only |
| **Howson, Michelle** | **075-25716** | **Dec 2019 - current** | | | | **$0.00** | **1** | **term 12/1/19** |
| KC, Eimlei | 075-54469 | Sept 2019 - current | $297.00 | | | $297.00 | 2 | den/vis-ee only |
| **Kincaid, Carrie** | **075-22619** | **Dec 2019 - current** | | | | **$0.00** | **1** | **term 12/1/19** |
| Lansborough, Michael | 075-14590 | September-19 | $1,195.00 | | | $1,195.00 | 2 | full cov, ee+children |
| Linzie (Sloan), Terrie | 075-29540 | September-19 | $742.00 | | | $742.00 | 2 | full cov/ee only |
| Logan, Steven | 075-68069 | Sept 2019 - current | $2,226.00 | | | $2,226.00 | 2 | 6/10/19-hire / FC ee only |
| Mallet, Jon | 075-52441 | July 2019 - current | $3,710.00 | | | $3,710.00 | 2 | full cov / ee only |
| Martin, Carl | 075-57164 | Nov 2019 - current | $742.00 | | | $742.00 | 2 | 8/22/19-hire |
| McBride, Rhett | 075-27232 | September-19 | $742.00 | | | $742.00 | 4 | 7/1/19-hire |
| McKillip, Guy | 075-46164 | August-19 | ($742.00) | $172.16 | | ($569.84) | 1 | 8/1/19-term |
| Olivares-Zermeno, Luis | 075-28396 | September-19 | $742.00 | | | $742.00 | 4 | 6/3/19-hire |
| Parker, Nicole | 075-87005 | July - Aug 2019 | ($2,390.00) | $227.10 | $18,768.47 | $16,605.57 | 1 | 7/1/19-term |
| **Pless, Hugh** | **075-51862** | **January-20** | | | | **$0.00** | **1** | **1/1/20-term** |
| Nicholason, Dale | 075-69950 | July 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| Quong, Fook | 075-38154 | Sept 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| Richardson, Dean | 075-87104 | August-19 | ($742.00) | $113.55 | | ($628.45) | 1 | 8/1/19-term |
| Rusk, Frances | 075-32737 | Sept 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| **Sensel, Christopher** | **075-30384** | **Dec 2019 - current** | | | | **$0.00** | **2** | **9/30/19-hire / FC ee only** |
| Stewart, Blake | 075-39794 | Sept 2019 - Dec | $0.00 | | | $0.00 | 2 | opt out |
| Stout, Michelle | 075-68509 | July 2019 & Sept 2019 - current | $2,968.00 | | | $2,968.00 | 2 | FC/ee only |
| Stevenson, Cierra | 075-48050 | July 2019 - current | $0.00 | | | $0.00 | 2 | opt out |
| Thatcher, Christopher | 075-69059 | September-19 | $1,195.00 | | | $1,195.00 | 4 | 7/1/19-hire / FC ee+child |
| Tresner, Quannah | 075-33746 | July - Aug 2019 | ($2,514.00) | $227.10 | | ($2,286.90) | 3 | 6/10/19-hire |
| Villapando, David | 075-19954 | July 2019 - current | $3,710.00 | | | $3,710.00 | 2 | FC ee only |
| Weston, Michael | 075-51466 | Sept 2019 - current | $501.00 | | | $501.00 | 2 | Den/Vis ee+spouse |

H

Liquidated damages due to underpayments, 6%                          $2,193.60
Penalty fee due to mistaken contributions, 5%                        $430.70

|       | Total | $50,419.33 |
|-------|-------|------------|

## Type of Discrepancy

1 - Employee was not on the payroll but was reported to the Trust.
2 - Employee was on the payroll but was not reported to the Trust.
3 - Employee should become eligible the 1st of the month following 60 days of employment but was reported prior.
4 - Employee should become eligible the 1st of the month following 60 days of employment but was not reported to the Trust.

EXHIBIT F

ROBERT BONSALL
GEOFFREY PILLER
CATHERINE E. HOLZHAUSER
ANDREW H. BAKER
SHEILA K. SEXTON
COSTA KERESTENZIS
PETER M. McENTEE
SUSAN K. GAREA
SARAH SANDFORD-SMITH
CHRISTOPHER HAMMER
STEPHANIE PLATENKAMP
LORRIE E. BRADLEY
TONY RICE
SARAH S. KANBAR
KENA C. CADOR
TRAVIS S. WEST

BEESON, TAYER & BODINE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
520 CAPITOL MALL, SUITE 300
SACRAMENTO, CALIFORNIA 95814-4714
(916) 325-2100
FAX (916) 325-2120

OAKLAND OFFICE
483 NINTH STREET, SUITE 200
OAKLAND, CA 94607-4081
(510) 625-9700
FAX (510) 625-8275

DONALD S. TAYER
(1932-2001)

WWW.BEESONTAYER.COM

OF COUNSEL
DUANE B. BEESON
JOHN PROVOST
DALE L. BRODSKY

jprovost@beesontayer.com

September 17, 2020

Ms. Kate Hudson.
Benefits Manager, Human Resources
Keolis Transit
470 Atlantic Avenue
Boston, MA  02210

Re:  *Audit of healthcare plan contributions to the Northern California
     General Teamsters Security Fund*

Dear Ms. Hudson:

I represent the Northern California General Teamsters Security Fund, the auditor for which – Employer Auditing Services – completed an audit of Keolis Transportation in February, 2020.

The draft audit findings found that Keolis had underpaid the Fund $59,879.83, and when Keolis provided additional information regarding some of the findings, that amount was revised to $50,419.33. A letter dated June 16, 2020 conveyed these revised findings to you and requested payment. The auditors followed up on this letter with phone calls on July 2, 8 and 13, 2020, but Keolis has not responded. Because the Trust Agreement for the Fund requires liquidated damages to be assessed on contributions that are not paid within 45 days of coming due, the Fund has also assessed a 12% liquidated damage charge of $6,050.31.

Accordingly, I am writing to formally demand that Keolis submit its payment to the Fund for this total of $56,469.64 in unpaid contributions and liquidated damages no later than September 30, 2020. If Keolis continues to be unresponsive with regard to this matter, the Fund will have no choice but to file suit to collect, and under ERISA, it would be entitled to recover its attorneys' fees and interest, in addition to the contributions and liquidated damages. To avoid such action, please send your payment by September 30. Thank you.

Very truly yours,

John Provost

JP/adb
Cc:   Kimberly Brown
      Marena Henne
      Lisa Moreno

914100 (1205-0005)